# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **BMARK 2020-B20 1960 RING ROAD, LLC,** § § § | |
| *Plaintiff*, § § | Case No. 2:24-cv-11670 |
| v. § § | |
| **Boruch ("Barry") Drillman, individually.** § § § | |
| *Defendant.* § | |

## PLAINTIFF'S COMPLAINT

Plaintiff BMARK 2020-B20 1960 RING ROAD, LLC ("**Plaintiff**" or "**Lender**"), acting by and through its special servicer Argentic Loan Services, files this Complaint and states as follows:

### I.  SUMMARY

1. Plaintiff files this lawsuit against Defendant Boruch ("Barry") Drillman ("**Defendant**" or "**Guarantor**"), to recover amounts that are due and owing on a commercial loan made by Original Lender, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION ("**Original Lender**"), to Mich Troy Technology LLC, a Delaware limited liability company ("**Borrower**"). Repayment of the loan was secured by, among other things, an office complex commonly known as Troy Technology Park in Troy, Michigan 48083 (the "**Property**"); and (ii) a personal guaranty entered into by Defendant Guarantor ("**Guaranty**").

### II.  JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, as outlined below, complete diversity of citizenship exists between Lender, on the one hand, and Guarantor, on the other hand, and because the amount in controversy exceeds

PLAINTIFF'S COMPLAINT – PAGE 1

$75,000.00, exclusive of interests and costs.

3.  Guarantor is subject to personal jurisdiction in Michigan because Lender's claims arise out of Guarantor's contacts with the State of Michigan, the fraud occurred in Michigan and was used for the purpose of the Property.

4.  Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all or a substantial part of the events or omissions giving rise to Lender's claim occurred in this District.

### III.  PARTIES

5.  Plaintiff is a Delaware limited liability company.

6.  Plaintiff's sole member is Wells Fargo Bank, National Association, as Trustee for the Benefit of The Registered Holders of Benchmark 2020-B20 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B20.

7.  Wells Fargo Bank, National Association is a national banking association whose main office is located in the State of South Dakota and its principal place of business is located in the State of California. Therefore, for purposes of diversity, the Plaintiff's citizenship is both a citizen of California and South Dakota.

8.  Defendant Boruch "Barry" Drillman resides at 9601 Collins Avenue, Bar Harbour, Florida 33154-211.

9.  Therefore, Defendant is a citizen of Florida for purposes of diversity jurisdiction.

### IV.  BACKGROUND FACTS

**A. THE LOAN AND LOAN DOCUMENTS**

10.  On or about September 25, 2020, Borrower received a commercial mortgage loan from Original Lender in the original principal amount of $45,000,000 (the "**Loan**").

11.  Defendant is the majority owner, sole member and President of the Borrower and

signed all loan documents.

12. The Mortgage constitutes a lien on the Property more fully described as 1870, 1900 & 1932 Technology Drive, Troy, MI 48083; 1960 Technology Drive, Troy, MI 48083; 1835, 1857, 1863, & 1891 Technology Drive, Troy, MI 48083; 1919, 1947 & 1975 Technology Drive, Troy, MI 48083; and 1960 Ring Drive, Troy, MI 48083. (See Legal Description attached as **Exhibit A.**)

13. The documents executed and delivered by Borrower to Original Lender in connection with the origination of the Loan include, but are not limited to, the following:

> (a) A *Promissory Note* dated effective as of September 25, 2020 and executed by Borrower in the original principal amount of $45,000,000.00 (the "Note"), a true and accurate copy of which is attached as **Exhibit B**.
>
> (b) A *Loan Agreement* dated effective as of September 25, 2020 and executed by Borrower (the "Loan Agreement"), a true and accurate copy of which is attached as **Exhibit C**.
>
> (c) A *Mortgage* dated effective as of September 25, 2020 and recorded October 8, 2020 in Instrument Liber 54964 Page 29, Oakland County, Michigan Records, (the "Mortgage"), a true and accurate copy of which is attached as **Exhibit D** (collectively, the "Loan Documents.")
>
> (d) *Guaranty Agreement* dated September 25, 2020 from Boruch ("Barry") Drillman, individually, for the benefit of Original Lender, a true an accurate copy of which is attached as **Exhibit E**.

14. To perfect its security interest in Borrower's personal property, Original Lender filed a UCC-1 Financing Statement on September 29, 2020 as Instrument No. 20206722716, Delaware Department of State (together with all amendments and continuations, the "Financing Statement"), a true and accurate copy of which is attached as **Exhibit F**.

Splitter Agreement

15. On September 30, 2020, the parties entered into a Note Splitter and Modification Agreement and Omnibus Amendment to Loan Documents attached hereto as **Exhibit G**.

16. The Splitter Agreement divided the Loan into two separate Promissory Notes, A-1

for $25,000,000 ("the A-1 Note") and A-2 for $20,000,000 ("the A-2 Note") See Promissory Notes, Ex. B.

**Assignment Of The Loan And Loan Documents to the Trust**

17.     Original Lender assigned the A-1 Note and Loan Documents to Wells Fargo Bank, National Association, as Trustee for the Benefit of the Registered Holders of Benchmark 2020-B20 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-B20 (the "Trust").

18.     The documents executed and delivered in connection with the assignment of the Loan and Loan Documents to the Trust include, but are not limited to, the following:

(a) *Allonge to Promissory Note* endorsing and assigning the A-1 Note to the Trust, a true and accurate copy of which is attached to and a part of the Note attached as Exhibit B;

(b) A *Co-Lender Agreement* dated as of October 30, 2020 between the Trust, as Note A-1 Holder and Original Lender, as A-2 Holder, was entered into to memorialize the parties agreement that the Special Servicer, agent acting on behalf of the Trust, has authority to act on behalf both of the A-1 and A-2 Notes and to bring any action, if necessary. (See Co-Lender Agreement, Section 5, p. 22, **Exhibit H**.)

(c) A *General Assignment* dated October 30, 2020, was executed by Original Lender, in its capacity as lead securitization note holder (the A-1 Note) assigning the A-1 Note to the Trust, a true and accurate copy of which is attached as **Exhibit I**.

19.     The Financing Statement was assigned to the Trust by virtue of a UCC-3 Financing Statement Amendment filed on December 7, 2020, as Document No. 2020 8564355, Delaware Department of State, a true and accurate copy of which is part of **Exhibit J**.

**Assignment Of The Loan And Loan Documents To Plaintiff**

20.     On May 27, 2024, the Trust assigned the A-1 Note and Loan Documents to Plaintiff BMARK 2020-B20 1960 RING ROAD LLC.

21.     The documents executed and delivered in connection with the assignment of the Loan and Loan Documents to the Trust include, but are not limited to, the following:

(a) *Allonge to Promissory Note* endorsing and assigning the Note to Plaintiff, a true and accurate copy of which is attached to and a part of the Note attached as Exhibit B;

(b) An *Assignment of Mortgage* with an effective date of May 27, 2024, was executed by the Trust and recorded on June 25, 2024 in the Oakland County Recorder as Liber 59446 Page 155 thru 160, a true and accurate copy of which is attached as **Exhibit K**.

22. The Financing Statement was assigned to Plaintiff by virtue of a UCC-3 Financing Statement Amendment filed on June 26, 2024, as Document No. 2024 4334981, Delaware Department of State, a true and accurate copy of which is part of **Exhibit L**.

**Borrower Defaulted on The Loan**

23. Borrower defaulted on the terms of the Loan and Loan Documents. These defaults include, but are not limited to, fraud in obtaining the loan and failure to make the monthly installment payments due in December, 2023 and for each subsequent month.

24. On January 10, 2024, Plaintiff's counsel sent Borrower a Notice of Default and Acceleration informing Borrower of these Events of Default.  That notice also accelerated the Loan, resulting in the entire balance being declared due and owing, including, but not limited to, any and all principal, interest, fees, costs, and charges. To date, Borrower has not responded or cured the default. (See letter attached as **Exhibit M**.)

## V. GUARANTOR BREACH

25. Guarantor signed a Guaranty Agreement with Original Lender on September 25, 2020 stating, among other things, that the Guarantor unconditionally guaranteed payment and performance. To wit:

> 1.1 **Guaranty of Obligation**. Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations [defined below] as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.
>
> \*        \*        \*

> 1.3 **Nature of Guaranty**. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor and after (if Guarantor is a natural person) Guarantor's death (in which event this Guaranty shall be binding upon Guarantor's estate and Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

(See Ex. G.)

26. The Guaranty provides that "the term 'Guaranteed Obligations' means all obligations and liabilities of Borrower pursuant to Section 9.3 of the Loan Agreement."

27. Section 9.3 of the Loan Agreement spells out those provisions allowing the Plaintiff to enforce a money judgment against the Guarantor. To wit:

> The provisions of this Section shall not, however, (a) constitute a waiver, release or impairment of any obligation evidenced or secured by any of the Loan Documents; (b) impair the right of Lender to name Borrower as a party defendant in any action or suit for foreclosure and sale under the Mortgage; **(c) affect the validity or enforceability of any guaranty made in connection with the loan or any of the rights and remedies of Lender thereunder;…**(g) constitute a waiver of the right of Lender to enforce the liability and obligation of Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation incurred by Lender (including attorneys' fees and expenses reasonably incurred) arising out of or in connection with the following:
>
> (i) fraud or intentional misrepresentation by Borrower, Principal or Guarantor in connection with the Loan;
>
> (ii) the gross negligence or willful misconduct of Borrower, Principal or Guarantor.

(See Ex. C.)

28. On October 25, 2023, Guarantor admitted to wire fraud and accepted a plea

agreement and a surrender of the Property.[1] (See Plea Agreement attached hereto as **Exhibit N.**)

29. According to *United States of America v. Boruch Drillman a/k/a "Barry Drillman,"* Case No. 23-CR-1053 pending in United States District Court, District of New Jersey,

> It was part of the conspiracy that conspirators engaged in a flip" transaction, in which the conspirators used a related party to purchase Troy Technology Park for $42,700,000 before selling or flipping the property to defendant Drillman for $70,000,000. The $70,000,000 purchase price was falsely presented to Financial Institution 1 as the price negotiated to purchase the property at arm's length. The purchase price was a key input used by Financial Institution 1 to determine the market value of the property. Members of the conspiracy purposely misled and concealed from Financial Institution 1 the true sales price of $42,700,000.
>
> It was further a part of the conspiracy, that based on the conspirators' false statements to Financial Institution 1, on or about September 25, 2020, Financial Institution 1 issued a loan to Troy Technology Holdings LLC, which was managed by defendant Drillman, in the amount of $45,000,000 for the purchase of Troy Technology Park. The conspirators further misrepresented to Financial Institution 1 that this loan amount was approximately 65% of the $70,000,000 purchase price.

(See Ex. L.)

30. When Plaintiff learned about the above plea, it immediately had a receiver take possession and control of the Property and began publication to foreclose. Defendant was given notice of all proceedings and never appeared.

31. Plaintiff foreclosed on the Property by public auction on May 28, 2024 at the Oakland County Circuit Court.

---

[1] As part of Defendant's acceptance of responsibility, and pursuant to 18 U.S.C. § 982, Defendant agrees to forfeit to the United States all of right, title, and interest in any property, real or personal, which constitutes or was derived from proceeds Defendant obtained that are traceable to the offense(s) charged in the Information. Defendant further acknowledges that one or more of the conditions set forth in 21 U.S,C. § 853(p) exists; and that the United States is entitled to forfeit substitute assets equal to the value of the proceeds obtained by the defendant. Defendant consents to the entry of an order requiring Defendant to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to Defendant prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

## VI.  CAUSES OF ACTION AND REMEDIES

A. **BREACH OF GUARANTY**

32. Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

33. Guarantor breached the Guaranty by, among other things, committing fraud and engaging in intentional misrepresentations and willful misconduct.

34. Guarantors' breaches have caused substantial damage to Lender, for which Lender brings this lawsuit to exercise its rights pursuant to law and/or equity.

B. **FRAUD, INTENTIONAL MISREPRESENTATION AND WILLFUL MISCONDUCT**

35. Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

36. As detailed above, Borrower/Guarantor committed fraud, and engaged in intentional misrepresentation and willful misconduct in connection with the Loan and the Property. Borrower/Guarantor's fraud, intentional misrepresentation and willful misconduct caused substantial damage to Lender and the Property, for which Lender brings this lawsuit to exercise its rights pursuant to law and/or equity.

C. **DAMAGES**

37. As of May 28, 2024, the payoff amount on the Loan guaranteed by Defendant was $42,215,457.19. At the public auction of the subject property, Plaintiff credit bid the market value of the property at $21,900,000 leaving a balance due and owing to Plaintiff of $20,315,457.39.

D. **ATTORNEYS' FEES**

44. Lender incorporates by reference all of the paragraphs above and below to the extent they are consistent herewith.

45. Because of Guarantor's actions, Plaintiff has found it necessary to engage the law firm of Holland & Knight LLP to prosecute this action and to protect its rights. Pursuant to Section 1.8 of the Guaranty,

> Payment of Expenses. In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder. The covenant contained in this Section shall survive the payment and performance of the Guaranteed Obligations.

Lender is entitled to recover from Defendant all costs and expenses in connection with the enforcement of the Guaranty, including, without limitation, its reasonable and necessary attorneys' fees incurred in the prosecution of this action.

## VI. CONDITIONS PRECEDENT

46. Lender has satisfied all conditions precedent to bringing this action.

## VII. PRAYER FOR RELIEF

47. Guarantor is cited to appear and answer herein; and on final trial hereof, Lender have judgment against Guarantor for Lender's actual damages and exemplary damages, as provided in the Loan Documents, and according to applicable law, and interest to the extent allowed by applicable law, together with its reasonable and necessary attorneys' fees and all costs of court, and such other and further relief, both general and special, at law or in equity, to which Lender may be justly entitled.

48. That the Court grant any other such, general, or different relief to which Lender may be entitled.

        Respectfully submitted,

        By: //Cara M. Houck

        Cara M. Houck
        Cara.houck@hklaw.com
        Illinois Bar No. 6239153
        **HOLLAND & KNIGHT LLP**
        150 N. Riverside Plaza
        Suite 2700
        Chicago, Illinois 60611
        (312) 263-3600
        **ATTORNEYS FOR PLAINTIFF**